May it please the Court, Counsel, Erin Lageson, on behalf of the Superintendent. This is a case where the AEDPA standards governing federal court review, a state court decision, foreclosed a grant of relief to petitioner, and we believe that the district court erred by concluding otherwise. Leaving aside the issues of procedural default and whether the precedence investigation and the psychological evaluation were properly in the record, the decision reached by the state post-conviction court on petitioner's due process claim and his ineffective assistance counsel claim is well within the range of decisions that reasonable jurists could reach on the record before that court. Is this a question of state law, whether the psych report was before the PCR court? It says we'll let it in for one purpose, but we don't have the contents. What does that mean, Bergen law, California law? I don't think it's so much a question of state law as a question of, you know, just what happened in this particular state court proceeding. What was happening, my understanding of what happened at the PCR trial level is the PCR attorney didn't show up with the psych eval. He made an offer of proof to preserve his challenge to the PCR court's decision to exclude it, and then at the end of the record, the PCR court changed its mind, said that it's in. Well, did he? Do you have the excerpt of record in front of you? Can you look at ER-133? I find that transcript to be virtually indecipherable. And unless there's more in the record than what we've got at ER-133, let me know when. There's not going to be anything more in the record. That's the best we've got? That's just my best reading. Let me read for both of you the passage that I find terribly confusing. Starting at line 4 on page 11 of the transcript, ER-133, the Court says, all right, I'm going to reverse my ruling on the admissibility of that evaluation, having heard, contrary to the offer of proof, what the bottom line is, and I'm going to admit it as one, I'm not leaving the case open for the contents. What does that mean? I have no idea. But how we've construed it and how we construed it in the State appellate courts was that the PCR court did admit the exhibit at that point. Well. But then what happened? Let's look at the bottom of that page, starting at line 21. PCR counsel says, do you want me to submit the psychological report as an exhibit to the court file? The court says yes. And then PCR counsel says, okay, I will do that. Thank you. And then the court starts to say, but I'm not leaving, dash, dash, and. . . And then we don't have anything else. That's it. And I looked in the record, and there is no page that. . . No, there's not. So what was the ruling of the PCR court? Did he admit the psychological report as a court exhibit, having refused the actual exhibit itself so that it would be available to a reviewing court on appeal? Did he accept counsel's offer of proof, or did he reject it? And I think those are all possible readings. But again, the way we've understood it throughout the proceedings and the way we understood it as reflected in our appellate court briefs in the State was that the court had admitted it, but it never made its way into the trial court file, and Petitioner on Appeal hadn't taken the steps that he needed to place it in front of the appellate courts for review. But we. . . Is that part of the record or not part of the record? I mean, that was. . . It seemed to me a State law question of what's the effect of admitting the evidence but not having the evidence actually present. I'm having. . . I'm grappling. Oh, and in terms of the. . . It's well established under Oregon law, and it's something that I mentioned in the briefs in this case and in our briefs in the State court, is that the burden is on the appellant in a case to make sure that the appellate court has what it needs for review. So if for some reason the trial court record that gets conveyed to the appellate court is not complete, then that weighs against the appellant. So did the district. . . Oh, excuse me. Go ahead. Did the district court then violate the rule in Cullen v. Pinholster when Judge King actually looked at the content of the psychiatric or psychological report in determining to grant habeas relief? It's a new, you know, sort of variation on Cullen. I think what it is more appropriately viewed as is sort of a Cullen plus, you know, rules of, you know, State exhaustion, rules of appellate procedure, whereas what we have is an exhibit that we haven't disputed was admitted before the State PCR court, but then the whole record did not make its way up to the appellate court. So even if the evaluation was properly, was before the PCR court when it reviewed the claims, the claim went to the appellate courts without that evaluation. But no Oregon judge, trial or appellate, ever looked at the report. That's. . . We know the appellate courts didn't. It appears that the PCR judge did not, although the PCR judge did admit it. So I think we've been willing to treat the PCR judge as having looked at it. How could he look at something that was never actually presented? In reality, he can't, unless he looked at it after. But it's. . . How could he have looked at it after it was never made a part of the record? I mean, this is just bizarre. It is. And, again, what we know is that it wasn't transmitted to the appellate court. We didn't find it in the appeal process. Nor was it given to the trial judge. But if it's considered part of the record, I mean, I guess that's whether or not somebody actually looked at it. We'll get a record from the district court and review it, and everything in the record is part of the record, whether the district court judge looked at it or not. Exactly. Exactly. Again, our only. . . Our point with the psych eval was it's sort of a twist on Cullen where the state appellate courts were contending didn't get to review it, which would make it inappropriate for the district court to look at it. But even leaving that aside, let's accept that it's. . . Well, it depends. But if they could have reviewed it, if it was in the record and available. I mean, stuff gets transmitted to us all the time. Well, it's not so much in the era of electronic filing. It's a little bit moot, because, you know, you can always go into electronic docket. But in the days not so long ago when records were actually transmitted, sometimes there would be stuff missing. Sometimes there wouldn't be the access to the record, and we'd say, gee, there's something missing. We'd call the clerk's office and district court and say, send us the rest of the stuff. And I can't tell you how often they would say, oops, it's lost. I can't find it. You know, it happened. But that didn't mean it wasn't before us. It wasn't available. And that's where it goes. But, you know, I don't know whether it's under Oregon State law, but under our law, if it was in fact submitted to the district court, it was before us. And the slight twist, I think, under Oregon law is if something is before the district court and for some reason the appellate doesn't take the steps to get it to the appellate court, then that weighs against the appellant. It's the appellant's obligation. You've used the phrase weighs against the appellant several times. It's such a mushy lawyer's phrase. I don't know what it means, it weighs against them. It's either in the record or it's not in the record. So I don't know what it means it weighs against them. And weighs against it could mean the appellate court could choose to ignore it if it wanted to. Or it could say, well, we're going to consider it, but we're going to give it less weight because we're going to weigh it against the appellant. So I have no idea what it means to weigh against the appellant. And I think it wouldn't be out of the range of discretion of the Oregon court of appeals to call the trial court and ask for things. But then again, the court doesn't have to. And if it's not there and then the review is on a less than complete record, then that's what the appellant's stuck with. But again, leaving all of that aside, even if the psychological evaluation is in the record, a reasonable fact finder was not compelled to find that Petitioner had established prejudice by reading that psych evaluation, because the psych evaluation itself says it should not be submitted to the court. It should not be relied on in making decisions about the Petitioner. It is not an evaluation of his competency at the time he was entering the plea. And it says that if they were interested in that information, they would have had to obtain a forensic psychologist to examine him. So even with it in the record, it would not have been a reasonable fact finder would have been entitled to discredit it. So that goes to the ineffective assistance of counsel claim, right? Yes, it does. And then on the argument that the trial court should have sua sponte had a competency hearing, the psych report clearly was not in front of the trial court, correct?  It has no bearing on that at all. I'm very confused. Sotomayor, we'll save you 8 seconds. I'll save it. Thank you. Good morning, Your Honors. May it please the Court. Good morning, Ms. Lageson. Indeed, it was very strange things that happened on the post-conviction record, but I think the best thing is to go actually to the text of 2254d. What that instructs us is that they look we look at a determination of the facts in light of the evidence presented in the State court proceeding. It doesn't say the paper or the document or the exhibit submitted. It says the evidence. And so when we look at the record and what happened in the post-conviction court, the lawyer makes an offer of proof. I mean, he says what's in the he hits the highlights for the post-conviction judge. Here's what the psych report said, and it's in the record. And so when it went up to the court of appeals, the Oregon court of appeals saw that transcript and so forth. And so what do we do with the statement by the trial court that contrary to the offer of proof? I think what he was saying was, I don't believe the psych report, and I'm, I'm, I'm, I don't want to let this leave this record open, because I want to make a decision right now, and here's what my decision is. And that's what he did. And my decision is, contrary to what PCR counsel just told me, I don't think that Mr. Beck has established a prima facie case of a violation to entitle him to habeas relief. That's the ultimate ruling of the court, right, when he says he hasn't met his burden of proof. I, he didn't. Isn't that what it means? I don't think that's what it means. I think what, what happened, this, this was a, this is in the record, too. This is a, was a pro tem judge sitting on this post-conviction petition. And I think that what he said was, Mr. Beck didn't raise his own incompetence, and this lawyer did whatever he was expected to do and did so competently. That's what the judge, I mean, there's a legal ruling in what the judge said in this case. The claim is, my plea was not knowing involuntary because I wasn't competent to enter it. That's, that's the basis of his PCR claim. And the judge who heard that claim considered whatever evidence he considered, and at the end of listening and considering, he said, you haven't met your burden of proof, which is, I think, to establish by preponderance of the evidence under Oregon law, that I, I was not competent at the time I entered the plea, and the trial judge should have seen it, and my lawyer should have raised it. So I, I see that as, as a failure of proof conclusion. Well, I think the post-conviction court had a lot more before it than simply the psych report. It had the, the transcript of what happened at the plea hearing. It had the transcript of what happened at the sentencing hearing. It had the discussion by the lawyers and, and the, the judge of this man's psychological condition. And then if you look in the ER, there's also the, the exhibits that the, the government submitted, the State submitted, saying that this man assaulted a guard right after his plea because he wanted his medications, and they wouldn't give him, there's a, there's a. But that doesn't render him incompetent. It may render him, you know, antisocial. It may render him, I don't know what the psychological term is, but incorrigible, for want of a non-psychiatric term. Yeah. That doesn't mean he's incompetent to enter, to knowingly and voluntarily enter a plea of guilty. It just means that he's a mean guy. Well, Your Honor, I think you're right that it doesn't necessarily conclusively establish incompetence, but what it does is it raises a bona fide doubt that a reasonable jurist, any reasonable jurist, would have found on this record. If you take away the Marlowe report and you take away this other side issue about the, the, whether the pre-sentence report was part of the record, on the, the four corners of the sentencing and plea transcript, you've got voices, you've got State hospital, you've got assaultive behavior, stabbing a teacher at a very young age, you have, at a very young age. That's, that is a, a red flag. You've got the mercy behavioral health referred to. You have his own lawyers saying, this is a very disturbed young man. But that's not, counsel, that's not the test for competency. The test for competency is whether or not he has, he understands the nature of the charges that are pending against him and the proceedings that he's facing, and whether he can assist counsel for the defense. And all of that conduct doesn't necessarily conclusively show that he's incompetent to do that, particularly where the lawyer has given no indication to the trial judge that he's having any problem discussing this case, and he's got a client who's insisting that he wants to plead guilty in a case where the evidence, if there's a term stronger than overwhelming, I don't know what it is, but he gets caught red-handed shooting at four police officers. Two things about that. I think that, to his credit, this trial attorney, when he went before the judge, the first thing he says is, Your Honor, we have a problem. This defendant is not, we're not working together. He may have defenses to this, but he doesn't care. He's in this big rush. And so the trial lawyer says, Judge, I'm not, you need to help because I'm not acting as this man's advocate. And what the lawyer says to the judge is, he wants to plead guilty against my advice that we ought to take our time here and investigate this case further. What, I mean, assuming that a client is competent, a client is entitled to listen to what his lawyer says to him and reject it and say, no, I want to plead guilty and get this over with because I know I'm going to prison. Your Honor, what I urge is that this case does not turn on whether or not Mr. Beck was competent on that morning. Really, what it turns on is, did this no, it turns on a duty to inquire. But your whole claim is that the trial judge and the lawyer shouldn't have let him plead guilty that day because he wasn't competent to plead guilty. Isn't that what this case is all about? Or did I miss something here? It's about a failure to inquire and a man who is incompetent, indeed. But if we know, by the time we're at the post-conviction stage, we know that if the trial judge had served his suespanti role, which is very clear from Pate v. Robinson, that a defendant, he's not expected to be his own advocate when he's in a mental health place. Kennedy, at what point are you saying the – let's start with the trial judge. At what point in the proceedings do you think that judge's suespanti duty was triggered? I think that the judge hears that he's – I mean, she's there and has an assessment of this person in front of her and sees that he's not working with his attorney, that he's in a hurry, that he seems to be agitated. I think that at the – and your Honors have read many transcripts of many plea proceedings. You're not answering my question. Yes, okay. I asked you for a point in time, and I'm not going to ask for an argument. I just said, what point in time are you claiming that this – what is it, the superior court judge, Oregon, right, superior court judge, the trial judge, had the duty, triggered the duty to say, start the proceedings, we need to find out whether this man is competent. When she said, are you taking any medication, and he said, no, ma'am, they won't let me have it. And then she just moved on. And where was this in the process? I don't remember. This was before she took the plea. He – she asked him, are you taking it, because she knew that – I think that the trial court knew there was something was wrong. This is long before the psychiatric report. Yes. Before she takes the plea, I believe it's just, you know, maybe on page, you know, the 11th page of the transcript. After the judge says, we have a problem, and she's ticking through, okay, are you taking any medication? That's a question we often hear at plea hearings. And he says, yes, ma'am, but they won't let me have it. And then she just moves on to the next question. And then you can sense she knows something's wrong, because she says, let me just ask you something. Are you depressed? I mean, are you just pleading guilty and throwing in the towel because you're depressed? And he says, no, ma'am. And indeed, he may not have been depressed, but I think by the time we get to the post-conviction court, we know that he was psychotic. He talks at the sentencing about hearing voices. And if the judge hadn't caught the medication piece before she ever took the plea, then by the time of sentencing. Kennedy, so what is it that she had at that point? She says, I'm not getting my meds, so she knows that he's on meds that he's not getting. And what else does she have? He wants to plead guilty against his lawyer's advice. Right. And this is very early in the process, at a very early stage, for such a serious, serious case. And she knows that that is erratic behavior. She knows that this is a, you know, just a really extreme course of conduct. And, you know, that's – I think that's really what she has before that. Medication issue, though, is really critical here. I wanted to make – It's not a whole lot, to tell you the truth. It's really not a whole lot. Lots of defendants act against their lawyer's advice, and it happens all the time. You know that very well. And it hardly ever works out when they do, but that's what they do. And not getting medication is not really – I mean, it's not really very much. This – and if it was the only thing, that would be one thing. But here, not just the – I or Judge Coote or Judge Tallman have stopped the proceedings, you know, who were – the question is, was it unreasonable later on to say that the charge at that point was not required to stop? It's a sort of double layer of deference that we have, you know. So it's very hard to say that this is such a compelling case. We submit that Judge King, in his opinion, he made an inventory of what these things were that doesn't rely on the two other pieces of evidence. Just my last moment, I wanted to ask the Court to clear up my due process exhaustion issue. I didn't – I don't think I submitted that as well as I could have in my brief. On page 188 of the ER is the petition for review, and there's an incorporation of the post-conviction appeal that talks about the sui sponte of the duty of the judge. That's at 145 and 147 of the excerpts of record where there's a due process argument that is right there in the petition. So we feel that this case is straight down the fairway in terms of AEDPA. We're not running from 2254d in any respect. The Supreme Court case law is incredibly clear on a duty. This is like drope. This is – and if the judge fails in her duty to inquire and the lawyer is incurious about his client's situation, does that mean that, you know, the mentally ill person shouldn't be able to have a remedy? Well, it doesn't, because the record was developed, and it does show that they took a plea from a psychotic person. And there wasn't even an offer of proof on – from the prosecutor about what acts this man did to commit these offenses, to say – I mean, was the evidence overwhelming? I don't think we know that from this record. We know there was certainly a shooting. But he was caught red-handed shooting at the police, and you don't think that the  Well, each – did he shoot at each one? I mean, there's no offer of proof in this – in this plea proceeding. It's very unusual that the government didn't offer, here's – here are the facts, here's why we know he committed these crimes. But you're not challenging the sufficiency of the evidence to support the plea. Your – your attack is on competency. It is, and this was a very rushed procedure. It was very – even the plea petition, which is in the documents, the Court has it before it, there's a place where, you know, there's places you can say, you know, am I taking medication? It's just skipped over. There's no initialing. There's no indication here that this very big moment, taking a plea from this man, was given even sort of the basic – when a trial judge goes through his or her checklist, that wasn't done here. And – and what happened is Mr. Beck, who's psychotic and incompetent and has been essentially abandoned by his lawyer, is – is put in a, you know, terrible position. Thank you. Thank you very much. The order of time. We'll give you a minute for rebuttal if you choose to take it. This is a case where the evidence before the trial court of – of calling into question petitioner's competency is far thinner than, you know, those in which this Court has held that its own trial courts have had a sua sponte obligation to – to hold order of competency hearing. I think when you review the record as a whole, even if Judge King's interpretation is one reasonable interpretation of it, the State courts – the State PCR courts interpretation of the evidence before the State trial court is also a reasonable view of what was going on. You have evidence that petitioner was responsible. Was it the same judge? No, it was not the same judge. It was not the same judge. The PCR judge was different from the – the trial judge. So there – there's evidence that petitioner responded appropriately. There's little – nobody called into question his competency. Medication showed he wasn't impaired by medication. And given those circumstances, we would ask that you would reverse the decision of the district court. Thank you. Thank you very much. The case is signed. We'll stand a minute. That concludes the calendar. We're adjourned.
judges: Kozinski, Tallman, Ikuta